HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
(212) 592-1400
Andrew C. Gold
Paul Rubin
*Prior Attorneys for Platform Learning Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                          :        Chapter 11
                                                :
PLATFORM LEARNING INC.,                         :        Case No. 06-11391 (RDD)
                                                :
                            Debtor.             :
-------------------------------------------------------------x

## SECOND AND FINAL FEE APPLICATION OF HERRICK, FEINSTEIN LLP AS ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED

Name of Applicant:                              Herrick, Feinstein LLP ("Herrick")

Authorized to Provide
Professional Services to:                       Platform Learning Inc. ("Debtor")

Role:                                           Attorneys for the Debtor

Date of Retention:                              June 26, 2006
                                                Effective June 21, 2006

Period for which Compensation
and Reimbursement is Sought:                    October 1, 2006 to July 31, 2009[1]

Amount of New Compensation
Requested:                                      $329,619.50

---

[1] Pursuant to an order dated October 15, 2008, Barton, Barton & Plotkin LLP ("BB&P") replaced Herrick as counsel to the Debtor effective as of September 8, 2008. The time reflected in the New Compensation Period reflects charges incurred up to the date of the substitution of Herrick and also reflects minimal time related to the transfer of the matter to BB&P and in the preparation of this Application.

HF 4250007v.4 #11954/0002

Amount of New Expense Reimbursement
Requested:                                    $9,240.86

Total Amount of Compensation
Previously Requested and Awarded:        Requested & Awarded:  $338,658.00 (fees) and
                                         and $13,740.07 (expenses) (Order dated December
                                         6, 2006; Docket No. 186)

HF 4250007v.4 #11954/0002

## ATTACHMENT TO FEE APPLICATION

| Name of Professional Individual | Position, year assumed position, prior relevant experience, year of obtaining relevant license to practice, area of expertise | Hourly Billing Rate (including changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Eric W. Sleeper | Partner. Expertise in bankruptcy matters. | $525.00 $550.00 | 185.00 263.50 | $ 97,125.00 $144,925.00 |
| Andrew C. Gold | Partner.  Expertise in bankruptcy matters. | $750.00 | 2.60 | $1,950.00 |
| David M. Bass | Counsel. Expertise in bankruptcy matters. | $475.00 | 99.80 | $ 47,405.00 |
| Carol Goodman | Partner. Expertise in litigation and employment law matters. | $500.00 $525.00 | 6.40 5.80 | $ 3,200.00 $ 3,045.00 |
| John August | Associate. Expertise in bankruptcy matters. | $450.00 $480.00 | 16.90 7.30 | $ 7,605.00 $ 3,504.00 |
| Rochelle R. Weisburg | Associate. Expertise in bankruptcy matters. | $400.00 | 14.50 | $ 5,800.00 |
| Paul A. Rubin | Partner. Expertise in bankruptcy matters. | $550.00 | .20 | $ 110.00 |
| Fred Green | Counsel. Expertise in employee benefits matters. | $600.00 | .50 | $ 300.00 |
| Kenneth E. Kobylowski | Counsel. Expertise in real estate matters. | $465.00 | 2.00 | $ 930.00 |
| Oksana Lashko | Associate. Expertise in bankruptcy matters. | $250.00 | 13.00 | $ 3,250.00 |
| Seth F. Kornbluth | Associate. Expertise in bankruptcy matters. | $355.00 $370.00 $390.00 | 6.30 .60 8.30 | $ 2,236.50 $ 222.00 $ 3,237.00 |
| Lisa Winkler | Paralegal | $230.00 | 11.00 | $ 2,530.00 |
| Antoinette Baylosis | Paralegal | $200.00 | 1.50 | $ 300.00 |
| Annabella Cruz | Managing Attorney. Expertise in litigation and procedural matters. | $175.00 $190.00 | 3.10 1.50 | $ 542.50 $ 285.00 |

3

| Name of Professional Individual | Position, year assumed position, prior relevant experience, year of obtaining relevant license to practice, area of expertise | Hourly Billing Rate (including changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Robert Andon | Managing Attorney. Expertise in litigation and procedural matters. | $200.00 | 2.30 | $   460.00 |
| Michael Friedman | Managing Attorney. Expertise in litigation and procedural matters. | $385.00 | .50 | $   192.50 |
| Edward Miller | Managing Attorney. Expertise in litigation and procedural matters. | $200.00<br>$215.00 | .50<br>.70 | $   100.00<br>$   150.50 |
| Edward Strecker | Managing Attorney. Expertise in litigation and procedural matters. | $230.00<br>$215.00 | .30<br>.50 | $    69.00<br>$   107.50 |
| Kevin Kimball | Managing Attorney. Expertise in litigation and procedural matters. | $190.00 | .20 | $    38.00 |

Total Services Rendered      $ 329,619.50
Total Hours                        654.80
Total Blended Rate             $513.43

HF 4250007v.4 #11954/0002

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
(212) 592-1400
Andrew C. Gold
Paul Rubin
*Prior Attorneys for Platform Learning Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re:                               :     Chapter 11

                                     :

PLATFORM LEARNING INC.,        :     Case No. 06-11391 (RDD)

                                     :

              Debtor.       :

----------------------------------------------------------------x

## SECOND AND FINAL FEE APPLICATION OF HERRICK, FEINSTEIN LLP AS ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED

Herrick, Feinstein LLP (hereinafter referred to as "Herrick" or the "Applicant") moves

pursuant to Sections 330 and 331 of Title 11 of the United States Bankruptcy Code (the

"Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure, General Order

M-151, Amended Guidelines for Fees and Disbursements for Professionals in Southern District

of New York Bankruptcy Cases (the "Local Guidelines"), and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 effective January 30, 1996 (the "UST Guidelines"), for a second

allowance of compensation for professional services rendered as attorneys for Platform Learning

Inc. (hereinafter referred to as the "Debtor" or the "Company") for the period of October 1, 2006

through July 31, 2009 (the "New Compensation Period"), as well as a final allowance for both

the New Compensation Period and as to those amounts previously awarded by the Court in its

Order of December 6, 2006 (collectively the "Final Compensation Period"), and for

HF 4250007v.4 #11954/0002

reimbursement for actual and necessary expenses incurred in connection with such services.  In

support of this application, the Applicant represents as follows:

## JURISDICTION

1.     This Court has jurisdiction over this Application pursuant to 28 U.S.C.  § 1334.

This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought

herein are Sections 330 and 331 of the Bankruptcy Code and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").    Pursuant to the Local Guidelines, a

certification regarding compliance with the Local Guidelines is attached.

## BACKGROUND

2.     On June 21, 2006 (the "Petition Date"), the Debtor filed in this Court its voluntary

petition for reorganization under Chapter 11 of Title 11, United States Code, 11 U.S.C. 101 et

seq. (the "Bankruptcy Code").  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the

Debtor is continuing to operate its business and manage its property as a debtor-in-possession.

3.     A Committee of Unsecured Creditors (the "Creditors Committee") was appointed

on June 30, 2006.

4.     The Debtor filed its Statement of Financial Affairs, Schedules of Assets and

Liabilities, and Schedules of Executory Contracts and Unexpired Leases (collectively, the

"Schedules") also on the Petition Date.  As of the date hereof, the Debtor has filed monthly

operating reports for the period through July 31, 2009.

5.     In 2002, the federal government, with the strong support of the President, passed

the No Child Left Behind education law (the "Law").  Under the Law, students from low-income

families as defined by Federal Poverty Guidelines, attending public schools that fail to meet

2

state-set performance goals for two consecutive years (also known as "Schools in Need of Improvement") are entitled to receive various supplemental education services ("SES"), including tutorial services. The services are funded by Federal Title I funds, received by local school districts tasked with administering and overseeing the delivery of SES, including the eligibility of parents for the program.

6.    The Company's founders recognized the potential opportunity for low-income parents generated by the Law, and formed the Company in March, 2003, as a privately held corporation, in an attempt to try and bring high quality instructional services to what have historically been underserved low-income communities. Understanding that there was very little tutoring capacity to serve these communities, the Company became a leading provider of SES, delivering after-school and weekend tutoring programs to thousands of eligible students attending public schools principally in urban and underprivileged areas. The Company seeks to collaborate with parents, schools, community organizations, and local educators to implement its research-based Learn-to-Succeed(SM) program, to assist in-need children to become successful students by providing appropriate support, motivation and curriculum that is tailored to their individual needs.

7.    The Company ran its first program in the Summer of 2003 in Philadelphia, Pennsylvania. The Company quickly determined the intense demand on the part of target parents to have their children receive "free" quality tutoring, enrolling over 1,000 students in several weeks. The Company saw similar demand in other cities in which it operated and expanded, focusing on seeking to provide SES tutorial programs in several metropolitan areas throughout the United States, including in New York (New York City), and New Jersey (Newark and Camden), in its first full year of operations. Adding Illinois (Chicago), Michigan (Detroit),

3

California (LA and San Bernardino), and Georgia (Atlanta) in its second year of operations and

Ohio (Cleveland), Florida (Miami, Ft. Lauderdale, Tampa, Orlando and Jacksonville), and

Nevada (Las Vegas) this past year.

8.      The Company was able to quickly move from enrolling 1,000 students to over

40,000 students in a span of approximately 2 years, as its programs and community focus

resonated with parents. While the Debtor experienced this early success, the challenges in the

Law and its implementation were also quickly apparent. Under the Law, districts are to provide

notice to parents that they may be eligible for SES; however, Title I funds available for these

services could be used for other purposes by districts, creating conflicting incentives. Moreover,

many districts were not barred from providing SES themselves, even where they had significant

numbers of underperforming schools, creating the awkward situation where a district could be a

"player" and "referee" under the law. Ultimately, the Debtor's rapid growth was anomalous and

unexpectedly not mirrored by the anticipated growth of the overall market of students in need of

the Company's tutorial services.

9.      More than 1,500 for- and not-for-profit providers of SES programs exist around

the United States. Yet, vast numbers of students are not getting or using the tutoring services the

law offers. In 2004 alone roughly 2 million students nationwide were eligible for free tutoring

during the school year, but only about 12% (approximately 226,000) actually sought and

received assistance.

10.     After its initial successes, the Debtor began to experience many of these issues,

registering thousands of parents whose children were never able to receive services. Beyond

these issues, the Debtor's services have been faced with increasingly significant challenges with

respect to access and marketing to parents, access to school facilities, and billing and payment

4

issues that created significant working capital challenges. Such challenges have come to be endemic to the SES industry.

11.     These operational hurdles faced by the Debtor also had a materially adverse impact on its financial performance, including a trying cash crisis. As reflected in the Debtor's Statement of Affairs, its SES revenues dropped almost 50% from approximately $58 million in the 2004-2005 school year to less than $30 million in the 2005-2006 school year. The Debtor was correspondingly caused to take drastic restructuring steps to be able to try and continue to provide its existing SES programs to in-need students through the current school year. Beginning in the final quarter of 2005, the debtor stopped any expansion of its programs to new markets, withdrew from markets and locations where services were not already in full operation, decreased its full-time employee-base from 215 employees down to 45 employees as of the Petition Date, and sought to cut its costs and expenses significantly.

12.     In December, 2005, the Debtor also engaged Argus Management Corporation ("Argus"), a business and  financial consulting firm specializing in crisis management and turnarounds, to assist the Company with, among other things, its restructuring, and cash management, budgeting and financial accounting services. In conjunction with management, Argus was also asked to provide guidance with respect to a reorganization and potential bankruptcy.

13.     As a result, the Debtor was able to downsize its operations in a manner that enabled it to successfully complete its 2005-2006 school year student programs. However, the sharply declining revenues of the Company left it with a marked inability to meet its overall financial obligations, both secured and unsecured. It was apparent to the Debtor's management that in the face of understandable ongoing creditor collection activity, and corresponding

5

litigation, it was only with the "breathing spell" afforded by the automatic stay under Section 362 of the Bankruptcy Code that the Debtor believed it could preserve value for the benefit of creditors of the estate either through a sale of its assets or a plan of reorganization.

## HERRICK'S RETENTION

14.    The Court authorized Herrick's retention as counsel for the Debtor in this Chapter 11 case effective nunc pro tunc as of June 21, 2006 in its Order Pursuant to Bankruptcy Code Section 327(a), authorizing the employment and retention of Herrick as attorneys for the Debtor, which was signed by this Court on June 26, 2006.

15.    The Debtor's primary counsel at Herrick since the Petition Date transferred his practice from Herrick to Barton, Barton & Plotkin LLP ("BB&P") as of September 8, 2008.

16.    Pursuant to an order dated October 15, 2008, BB&P replaced Herrick as counsel to the Debtor effective as of September 8, 2008.  The time reflected in the New Compensation Period reflects charges incurred up to the date of the substitution of Herrick and also reflects minimal time related to the transfer of the matter to BB&P and in the preparation of this Application.

## COMPENSATION REQUESTED

17.    During the New Compensation Period, Herrick attorneys and paraprofessionals expended a total of 654.80 hours for which the allowance of compensation is requested. Specifically, Herrick seeks allowance of compensation for professional services rendered to the Debtor during the New Compensation Period in the aggregate amount of $329,619.50, and for reimbursement of expenses incurred during that Period in connection with the rendition of such services in the aggregate amount of $9,240.86.  Additionally, Herrick seeks a final allowance not only as to those amounts specified for the New Compensation Period but also as to all amounts

6

previously allowed on an interim basis pursuant to the Court's Order previously entered on December 6, 2006.[2]

18.    The fees sought by the Application reflect an aggregate of 654.80 hours of attorney time spent and recorded in performing services for the Debtor and its estate during the New Compensation Period, at a blended average hourly rate of $513.43.

19.    Herrick rendered to the Debtor and its estate all services for which compensation is sought in connection with this Chapter 11 case.

20.    Herrick maintains computerized records of time expended in the rendition of the professional services required by the Debtor and its estate.  These records are maintained in the ordinary course of Herrick's practice.  For the convenience of the Court and all parties in interest, attached hereto as part of the cover sheet is the billing summary for the New Compensation Period, setting forth the name of each attorney for whose work on this Chapter 11 case compensation is sought, each attorney's year of admission to the bar, the aggregate of time expended by each professional, and the hourly billing rate for each attorney.  Also set forth in the billing summary is information indicating whether each attorney is/was a partner, counsel or associate, how many years each attorney has held this position, and each attorney's area of practice concentration.  The compensation requested by Herrick is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

---

[2] The Court, in an Order entered on December 6, 2006, allowed Herrick's first interim application for the period through September 30, 2006 for fees of $338,658.00 and expenses of $13,740.07.  To date, Herrick has received payment of $211,753.64 (inclusive of its original retainer) with respect to its first interim application, leaving a balance due thereunder of $140,644.43.  Additionally, during the first two months (October and November, 2006) of the New Compensation Period, and pursuant to the then Court-approved monthly payment arrangement, Herrick received two partial payments totaling $63,085.53 for the months of October and November, 2006.

7

21.    Herrick also maintains computerized records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories of expenses for which reimbursement is sought is also attached hereto as part of the cover sheet.

22.    There is no agreement or understanding between Herrick and any other person, other than the members of Herrick, for the sharing of compensation to be received for services rendered in this case.

## TIME AND EXPENSE RECORDS

23.    As required by the Local Guidelines, a certification regarding compliance with same is attached hereto as **Exhibit A**.

24.    Attached hereto as **Exhibit B** is a detailed statement of services rendered for the time period from October 1, 2006 through and including July 31, 2009.  This statement contains daily time logs (identifying the project category) describing the time spent by each attorney for this period.  Attached hereto as **Exhibit C** is a breakdown by project categories of the time expended thereto.

25.    Attached hereto as **Exhibit D** is a summary of the actual and necessary expenses incurred by Herrick for the period for the time period from October 1, 2006 through and including July 31, 2009.

26.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the New Compensation Period, but were not processed prior to the preparation of this Application, Herrick reserves the right to request additional compensation for such services and reimbursement of such expenses prior to final consideration of this Application.

8

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

27.    Since the outset of the Debtor's Chapter 11 case, Herrick has rendered professional services to the Debtor as requested and as necessary and appropriate in furtherance of the interests of the Debtor and its estate and creditors.    The variety and complexity of the issues involved in this Chapter 11 case and the need to act or respond on an expedited basis (on several instances) in furtherance of the Debtor's needs have required the expenditure of time by personnel from several legal disciplines, on an as-needed basis.

28.    To provide an orderly and meaningful summary of the services rendered on behalf of the Debtor and its estate by Herrick, in accordance with the Guidelines, Herrick has established the separate project billing categories set forth below in connection with this Chapter 11 case.[3]    Although the categories are generally described by their definition, a more detailed identification of the actual services performed is set forth on Exhibit C attached hereto.    The attorneys who rendered services relating to each category are also identified on that Exhibit, along with the number of hours for each individual.    The categories are as follows:

> Case Administration
> Asset Analysis and Recovery
> Asset Disposition
> Relief from Stay/Adequate Protection
> Meetings of & Communications w/Creditors
> Fee/Employment Applications
> Fee/Employment Objections
> Avoidance Action Analysis
> Assumption/Rejection of Leases/Contracts
> Contested Matters
> Non-Working Travel
> Business Operations
> Employee Benefits/Programs
> Financing/Cash Collections
> Tax Issues

---

[3]To the extent necessary and to streamline the reporting of various related legal tasks performed by Herrick's attorneys during the New Compensation Period, certain matter numbers or project categories have been combined.

9

Real Estate
Claims Administration & Objections
Plan & Disclosure Statements

29.     The following is a summary of some of the more significant professional services

rendered by Herrick during the New Compensation Period.   Exhibits B and C contain more

detailed descriptions of the services rendered by Herrick during the New Compensation Period

and the following summary is not intended to be comprehensive.  The detailed description shows

that Herrick was heavily involved in the performance of services for the Debtor on a daily basis,

including, at times, night and weekend work; several times under extreme time pressure in order

to meet the needs of the Debtor and its estate in this Chapter 11 case.

30.     A good portion of the time spent by Herrick during the New Compensation Period

related to several different forms of debtor in possession financing, a Plan and Plan Support

Agreement, asset sales, avoidance actions and other claims, and a number of daily operational-

related and case administration matters.

31.     However, Herrick's role, as counsel to the debtor-in-possession, has not stopped

there.  Following the Debtor's Chapter 11 filing, Herrick played an integral part in resolving the

Debtor's legal and operational issues as a result of the filing, including, *inter alia,* negotiating the

Debtor's continued use of cash collateral and its new debtor-in-possession financing, addressing

various operational and sale-related issues, leasehold issues and analysis of  various emergent

issues.  Herrick also assisted the Debtor in the preparation of its cash flow and operating reports.

32.     The change of the Debtor's strategy from an initial sale mode to that of an

ongoing operating business necessitated a tremendous amount of time be expended in

negotiating financial alternatives including extensive negotiations for post petition financing.

Nevertheless, Herrick worked diligently to minimize administrative expenses and any potential

10

disruption in the Debtor's business.    All of Herrick's efforts were taken with the goal of optimizing the value of the Debtor's assets which, in turn, would hopefully provide a value basis to the Debtor's estate and its creditors, while at the same time avoiding duplication of services.

## A.    Debtor's Proposed Asset Sale

33.    On June 22, 2006, the Debtor filed its motion seeking the entry of an Order, inter alia, scheduling a hearing to authorize the Debtor to sell substantially all of its assets, free and clear of any and all liens, claims, encumbrances and interests to PLAC, Inc., an entity affiliated with Ascend Venture Group, LLC ("Ascend"), or such higher and better offeror (the "Sale"). The Court entered an Order on June 29, 2006, inter alia, scheduling a hearing on the Sale and approving the bidding and sale procedures for the Sale.

34.    Herrick worked diligently with the Debtor to pursue approval of the expedited sale.    Given the outstanding obligations of the Debtor as of the Petition Date, the Debtor determined that it was in the best interests of all of its creditors, its employees and its estate, to seek to sell its assets promptly in order to try  and maximize the value of the assets and any returns to its creditors.

35.    Herrick worked with the Debtor to try and obtain approval of the Sale.    Herrick expended significant time addressing various matters raised by the Debtor, the Buyer, the Debtor's bank and mezzanine financiers and the Committee regarding the Sale.    Herrick also sought to constructively address several objections raised about the Sale.    Notwithstanding Herrick's efforts to accomplish the Sale, the Debtor was ultimately forced to withdraw from the sale process largely because of the impact of objections filed by the New York City Department of Education and the New York State Education Department.    Left with no alternative, on August 23, 2006 the Debtor withdraw its Sale motion and the Debtor and Herrick set out to

11

pursue a new plan of action to sustain the Debtor and ongoing operations in providing supplemental education services to public school students.

**B.      Debtor Pursues Alternatives and the Need for Post Petition Financing**

36.    After withdrawing the Sale, Herrick began to explore with the Debtor other options including securing post petition financing, and an exit strategy, through a plan of reorganization.

37.    During the course of this proceeding, the Debtor paid off a significant portion of its Prepetition Indebtedness to the Bank from more than $5,000,000 down to approximately $490,000.00 by the end of September, 2006 (a 3 month period).  Correspondingly, however, the Debtor's accounts receivable dwindled leaving the Debtor in a precarious situation in the absence of new financing.

38.    The new school year was about to begin and the Debtor's services were once again being re-energized to provide tutorial programs to students.  New financing was needed to pay down the balance of the Pre-Petition Indebtedness, pay ongoing and budgeted operating expenses, pay other administrative expenses, work toward the preparations of a Plan  and to formulate an exit strategy, among other things.

39.    During this New Compensation Period, Herrick negotiated at length not only with Ascend to secure debtor in possession financing, but also with the Bank, the Subordinated Creditors, the Committee and the professionals retained in the case.  Herrick prepared the majority of the documentation memorializing the financing and the motion papers related thereto.  As a result of these negotiations, the parties finally reached agreement on the financing terms and the Court entered orders in October and November, 2006 approving the same.

12

40.    Even with approval of the Ascend financing however, the matter of the Debtor's ongoing financing consumed a significant amount of time and effort through the final quarter of 2006 and the first half of 2007. Herrick was caused to devote substantial time, sometimes on an emergent basis, during this time frame to assist the Debtor in procuring, negotiating, documenting, obtaining court approvals for, and maintaining ongoing financing in order for it to continue to provide educational services to students through the 2006-2007 school year.

**C.    Blue Wolf Financing, Plan & Plan Support Agreement**

41.    After the Court approved the Debtor's Loan Agreement (a/k/a "DIP") with Ascend and a corresponding Services Agreement with PLAC, Inc. ("PLAC"), Ascend ultimately became unwilling to continue to provide additional funding to the Debtor under their Loan Agreement. Ascend also expressed its intention to terminate the operations of PLAC. Either of these events may have effectively put an end to the Debtor's ability to reorganize under Chapter 11 by the end of 2006.

42.    To avoid that consequence, the Debtor, with its counsel at Herrick, worked extensively with Ascend, the Subordinated Creditors, PLAC and the members of the Creditors Committee to negotiate with Blue Wolf Capital Management, Inc. ("Blue Wolf") an amendment to the then existing DIP whereby Blue Wolf provided additional post-petition financing under the terms of an Amended Loan Agreement, together with an Amended Services Agreement.

43.    Herrick coordinated, on behalf of the Debtor, extensive due diligence work undertaken by Blue Wolf preceding its funding commitment, the negotiation and documentation of the same, as well as the Court's approval of the amended funding. All of this needed to be accomplished on a fairly expedited basis.

13

44.     As part of the new funding commitment from Blue Wolf the parties were also caused to negotiate and memorialize the terms of a contemplated plan of reorganization ("Plan") and corresponding plan support agreement. Herrick undertook the same on behalf of the Debtor which resulted in the merger of the contemplated Plan and plan support agreement with the amended financing as thereafter approved by the Court. Subsequently, Herrick negotiated and prepared further modifications of the Amended Loan Agreement with Blue Wolf for additional financing.

**D.     Conclusion of 2006-2007 School Year and Sale**

45.     As the Debtor moved into the last couple of months of the 2007 school year, Blue Wolf indicated that it had determined not to continue new funding beyond June, 2007 and would be withdrawing from the previously contemplated Plan. Herrick advised the Debtor with respect to its options in light of Blue Wolf's decision. Ultimately, upon the conclusion of the 2006-2007 school year, the Debtor determined to conduct a sale of certain of its remaining assets. Herrick prepared and filed the necessary pleadings for the sale which the Court approved by Order entered on August 28, 2007.

**E.     Preference/Fraudulent Conveyances and Claims With Respect to the City of NY**

46.     Herrick, on behalf of the Debtor, worked with Creditors Committee counsel and special counsel in the analysis and documentation of potential preference and/or fraudulent conveyance claims to be pursued on behalf of the Debtor's estate. Several meetings were held, and numerous correspondence and document productions, resulting in the filing in June, 2008 of a number of preference actions which continue to be prosecuted. Additionally, counsel to the Debtor and the Creditors Committee, with the material assistance of the Debtor, investigated potentially significant claims of the Debtor's estate as against the City of New York. Those claims continue to be pursued.

14

HF 4250007v.4 #11954/0002

## OTHER SIGNIFICANT EVENTS IN CHAPTER 11

### A.    Other Expected and/or Ordinary Court Matters

47.    Expectedly, Herrick provided services during the New Compensation Period with respect to a host of other anticipated and/or ordinary course Chapter 11 case matters.

48.    Herrick handled, and correspondingly documented, several leasehold matters, including with respect to the Debtor's New York headquarters and the Debtor's orderly transition from the same during the last quarter of 2007.  Additionally, Herrick provided services with respect to the assumption or rejection of various other contracts and leases.

49.    While the contemplated Plan with Blue Wolf was pending, Herrick prepared the necessary pleadings for and obtained extensions of the Debtor's exclusive periods.

50.    Herrick assisted the Debtor in responding to and settling certain stay relief motions, addressing matters raised with respect to certain former employees, and matters concerning tax reporting.

51.    Herrick prepared pleadings for and obtained the entry of an Order establishing a claims bar date and thereafter advised the Debtor with respect to certain of the claims filed against its estate.

52.    During the New Compensation Period, Herrick also assisted the Debtor in the preparation of various financial reports as well as the Debtor's monthly operating reports in compliance with the United States Trustee's Guidelines.

53.    Herrick attorneys and paraprofessionals expended time responding to individual creditor inquiries relating to the status of the Chapter 11 case and other related matters.  Additionally, Herrick attended several meetings (in-person or by conference call) with the Creditors Committee and others during the New Compensation Period and was routinely in contact with their respective counsel.

HF 4250007v.4 #11954/0002

**B.    Preparation for and Attendance at Court Hearings**

54.    During the New Compensation Period, Herrick prepared for and attended several hearings and conferences before this Court, including, without limitation, several hearings on post-petition financing, asset sales, stay relief, lease rejections and related matters.

## REASONABLE AND NECESSARY SERVICES RENDERED BY HERRICK

55.    Herrick's services in this Chapter 11 case required a high degree of professional competence and expertise so that various material issues requiring evaluation and determination by the Debtor could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.    Indeed, Herrick provided substantial, ongoing services during the course of this Chapter 11 case.    It is submitted that Herrick's services were integral to minimizing any disruptions to the Debtor's operations and the later orderly wind down of the same.

56.    Herrick advised and assisted the Debtor in every phase of this Chapter 11 case during the New Compensation Period.    To this end, Herrick expended 654.80 hours during this Period rendering professional services on behalf of the Debtor and its estate.

57.    Accordingly, the foregoing professional services rendered by Herrick on behalf of the Debtor and its estate during the New Compensation Period (as described in greater detail in Exhibits B and C attached hereto) were reasonable, necessary and appropriate to the administration of the Debtor's chapter 11 case and related matters.    The professional services performed by Herrick were in the best interests of the Debtor and its estate, creditor constituencies, and other parties in interest.    Compensation for the foregoing services as requested is commensurate with the complexity, importance, magnitude, deadlines and nature of the problems, issues or tasks involved.    Additionally, the professional services for which

16

compensation is sought herein were performed expeditiously and in an efficient manner. Accordingly, Herrick submits that such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy cases in a competitive legal market.

## ACTUAL AND NECESSARY EXPENSES INCURRED BY HERRICK

58.     Herrick also seeks allowance of the reimbursement of its disbursements and other expenses Herrick has incurred on behalf of the Debtor during the New Compensation Period in the aggregate sum of $9,240.86.  Those charges are identified on Exhibit D attached hereto. Herrick has made every effort to minimize its disbursements in this case.

59.     The disbursements sought by Herrick include, for instance, filing fees, postage, long distance telephone charges, photocopying, computer assisted online legal research, filing/recording fees, court reporter charges, messenger charges and out-going facsimile charges. Herrick sought to utilize the most cost efficient method of transmission consistent with the necessary time constraints.  Herrick's charge in this case for photocopying expenses is $.18 per page.  Herrick's regular charge and charge in this case for outgoing facsimile transmissions is $1.00 per page.  No charge is made for incoming facsimile transmissions.  Computer assisted legal research charges (Lexis and Westlaw) are based on time charges for the computer search. Clients are charged the invoiced cost.  Use of Lexis and Westlaw greatly enhances legal research and access to case law and other information from all jurisdictions, and is cost efficient, saving substantial attorney research time.  Other disbursements are itemized in the schedule annexed as Exhibit D.  These disbursements were necessary to effectively render legal services to the Debtor.

HF 4250007v.4 #11954/0002

60.     Each of these actual expenses incurred in connection with Herrick's services were reasonable, necessary and justified under the circumstances to serve the needs of the Debtor in this case.

## STANDARD OF REVIEW

61.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of Section 330 to govern the Court's award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered ... and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under Chapter 11, or professional person, the court shall consider the nature, extent, and the value of such services, taking into account all relevant factors, including --
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

18

HF 4250007v.4 #11954/0002

62.    Essentially, Section 330 of the Bankruptcy Code requires that services for which compensation is awarded must be both necessary and reasonable. *In re Keene Corp.*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997). The test for determining necessity is objective, focusing on what services a reasonable lawyer would have performed under the same circumstances. *In re Angelika Films 57th, Inc.*, 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998). This test does not rely on hindsight to determine the ultimate success or failure of the attorney's actions. *See id.*; *Keene*, 205 B.R. at 696. Ultimately, "if the services of a debtor's attorney are reasonably likely to benefit the debtor's estate, they should be compensable." *Angelika Films*, 227 B.R. at 42.

63.    Herrick respectfully submits that the services for which it seeks compensation in this Application were necessary, reasonable and beneficial to the Debtor's estate. Herrick further submits that the expenditures for which it seeks reimbursement were actual, necessary and expended in the best interests of the Debtor's estate, and that the compensation sought is reasonable in light of the nature, extent and value of the services rendered to the Debtor, its estate, and all parties-in-interest.

64.    As described above, Herrick devoted a substantial amount of time and effort to the numerous and complex issues related to this Chapter 11 case. In addition, by this Application, Herrick seeks its customary fee at rates which are comparable to those charged by law firms of a similar size and expertise in New York City. Herrick's request for reimbursement of expenses also comports with its general policy of collection in full of all such expenses incurred on behalf of clients in non-bankruptcy cases, as modified by the Guidelines. Herrick, in one form or another, has been engaged in the practice of law for more than seventy-five (75) years and has developed extensive experience representing clients in all areas of bankruptcy cases.

19

65.    Moreover, Herrick submits that a consideration of the factors enumerated in the case of *In re First Colonial Corp. of Am.,* 544 F.2d 1291, 1298-99 (5th Cir. 1977), which standards have been adopted by most courts, including courts within this District, *see In re Cuisine Magazine, Inc.,* 61 B.R. 210 (S.D.N.Y. 1986), should result in this Court's allowance of the full compensation and reimbursement sought herein.

(a)    ***The Time and Labor Required.***    The professional services rendered by Herrick on behalf of the Debtor required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the many complex issues encountered by the Debtor with skill and dispatch.    Several times Herrick was required to perform these services under significant time constraints.    Herrick respectfully represents that the services rendered by Herrick were performed efficiently, effectively and economically.

(b)    ***The Novelty and Difficulty of Questions.***    Complex issues arose in the course of  this Chapter 11 case, including with respect to the critical but varying forms of post-petition financing sought and obtained by the Debtor.    In this Chapter 11 case, as in many others in which the firm is involved, Herrick's effective advocacy and creative approaches to solving problems helped clarify and resolve such issues and were beneficial to the Debtor's estate.

(c)    ***The Skill Required to Perform the Legal Services Properly.***
Herrick believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Herrick's practice and its consensus-building approach to the resolution of disputes have contributed to the efficient administration of this Chapter 11 case.

20

(d)      *The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.*  Herrick's representation of the Debtor has not precluded its acceptance of new clients.  However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to this Chapter 11 case.

(e)      *The Customary Fee.*    The fee sought herein is based upon Herrick's normal hourly rates for services of this kind.  Herrick respectfully submits that the fee sought herein is not unusual given the complexity of this Chapter 11 case and the time expended in attending to the representation of the Debtor, and is commensurate with fees Herrick has been awarded in other Chapter 11 cases, as well as with fees charged by other attorneys of comparable experience.

(f)      *Whether the Fee is Fixed or Contingent.*    Pursuant to Sections 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under Section 327 of the Bankruptcy Code are "contingent" pending final approval by this Court.

(g)      *Time Limitations Imposed by Client or other Circumstances.*  As already indicated, Herrick was required to attend to the various issues arising in this Chapter 11 case.  Several times Herrick had to perform those services under significant time constraints.

(h)      *The Amount Involved and Results Obtained.*  Herrick respectfully submits that through its efforts, this Chapter 11 case have been administered in an efficient and economical manner, thereby preserving the value of the Debtor's assets in a manner that should assist in maximizing the value of the Debtor's estate.

(i)      *The Experience, Reputation and Ability of the Attorneys.*  Herrick is a limited liability partnership whose more than 160 attorneys practice extensively in the fields

21

HF 4250007v.4 #11954/0002

of bankruptcy, litigation, real estate, corporations, criminal, trusts and estates and other phases of

the law.   Herrick has represented debtors, creditors, creditors' committees, and trustees in

various proceedings before the Bankruptcy Courts for the Southern, Eastern, Northern and

Western Districts of New York as well as in various other Bankruptcy Courts throughout the

country.

(j)    *The Undesirability of the Case.*   This Chapter 11 case was not

undesirable, but as already indicated, required, at times, a significant commitment of time from

several of the attorneys assigned hereto.

(k)    *Nature and Length of Professional Relationship.*   Herrick was

retained by the Debtor prior to the commencement of this Chapter 11 case to pursue an out-of-

court restructuring, and was retained as general bankruptcy counsel to the Debtor since the

beginning of the Debtor's Chapter 11 case and performed services as have been necessary and

appropriate.

66.    In the instant case, Herrick respectfully submits that the services for which it

seeks compensation in this Application were, at the time rendered, believed to be necessary for

and beneficial to the Debtor and its estate, and were rendered in order to protect and preserve the

Debtor's estate during the pendency of this Chapter 11 case.   Herrick respectfully submits that

the services rendered to the Debtor were sought to be performed economically, effectively and

efficiently, and the results obtained to date have benefited not only the Debtor, but also the

Debtor's estate and the creditor body as a whole.   Herrick further submits that the compensation

requested herein is reasonable in light of the nature, extent, and value of such services to the

Debtor, its estates, and all parties in interest.

22

67.     Herrick attorneys spent a total of 642.10 hours during the New Compensation Period.  As demonstrated by this Application and the exhibits attached hereto, Herrick spent its time economically and without unnecessary duplication.  In addition, the work conducted was sought to be assigned to appropriate professionals according to the experience and level of expertise required for each particular task.

68.     In sum, the services rendered by Herrick were necessary and beneficial to the Debtor and its estate, and were consistently performed in a timely manner commensurate with the complexity, importance, novelty, and nature of the issues involved.  Accordingly, approval of the compensation sought herein is warranted.

## <u>NOTICE</u>

69.     Notice of this Application will be provided to: (a) the Debtor; (b) Ascend, (c) the Subordinated Creditors, (d) the Committee; (e) the U.S. Trustee; (f) all parties who filed and served a notice of appearance on Herrick; and (g) all creditors of the Debtor.

23

## CONCLUSION

WHEREFORE, Herrick, Feinstein LLP respectfully requests entry of an Order (1) allowing and awarding compensation for professional services rendered during the New Compensation Period in the amount of $329,619.50 and reimbursement of expenses incurred by Herrick during the New Compensation Period in the amount of $9,240.86, (2) granting a final allowance for the same as well as with respect to those amounts previously allowed on an interim basis pursuant to this Court's Order entered on December 6, 2006, and (3) for such other relief as is just and proper.

Dated: August 14, 2009
    New York, NY

           HERRICK, FEINSTEIN LLP

           By: /s/Andrew C. Gold
               Andrew C. Gold
               Paul Rubin
               2 Park Avenue
               New York, NY 10016
               Telephone: (212) 592-1400
               Facsimile: (212) 592-1500

           *Prior Attorneys for Platform Learning Inc.*
           *Debtor and Debtor-in-Possession*

HF 4250007v.4 #11954/0002